## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 1401 NYA REO, LLC §<br>7101 Wisconsin Avenue §<br>Suite 1210 §<br>Bethesda, Maryland  20814, §<br>§<br>        Plaintiff, §<br>§<br>v. §<br>§<br>LAWYERS' COMMITTEE FOR CIVIL §<br>RIGHTS UNDER LAW §<br>1401 New York Avenue, N.W. §<br>Washington, DC  20005, §<br>§<br>        Defendants. § | Civil Action No. _____<br><br><br><br>COMPLAINT |

Plaintiff, 1401 NYA REO, LLC (Landlord") files its Complaint against Defendant, Lawyers' Committee for Civil Rights Under Law ("Tenant") and would respectfully show as follows:

### NATURE OF THE ACTION

1.     This Complaint arises out of Tenant's breach and anticipatory breach of its obligations related to its lease of commercial office space located at 1401 New York Avenue, N.W., Washington, D.C., and for declaratory judgment.

### THE PARTIES

2.     Plaintiff Landlord is a Delaware limited liability company having its principal place of business at 7101 Wisconsin Avenue, Suite 1210, Bethesda, Maryland 20814.  The other members of Landlord are Delaware or Maryland limited liability companies.

3. Defendant Tenant is upon information and belief a District of Columbia non-profit corporation having a principal place of business located at 1401 New York Avenue, N.W., Washington, D.C.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is diversity of citizenship between the parties, and the amount in controversy exceeds the sum of value of $75,000, exclusive of interest and costs.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Tenant resides in this judicial district, a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in the District of Columbia, and the property at issue is located in the District of Columbia.

## FACTUAL BACKGROUND

### The Lease

6. Landlord's predecessor, 1401 New York Avenue, Inc. entered into a lease with Tenant on or about February 24, 1999 (the "Lease"). A true and correct copy of the Lease is attached hereto as Exhibit 1 and is incorporated herein for all purposes.

7. The Lease provided for a ten-year term for approximately 15,011 rentable square feet of space consisting of the fourth floor of the office building located at 1401 New York Avenue, N.W., Washington, D.C. (the "Building").

8. The Lease has essentially remained unchanged since it was entered into, although it has been amended from time to time, including the Second Amendment to Lease which was executed on or about November 14, 2007 (the "Second Amendment"). A true and correct copy

of the Second Amendment is attached hereto as Exhibit 2 and incorporated herein for all purposes.

9. The Second Amendment, among other things, extended the term of the Lease, and expanded the leased premises by an additional 3,743 rentable square feet on the fifth floor of the Building.

10. A Third Amendment of Lease was entered into on or about March 28, 2011 (the "Third Amendment").  A true and correct copy of the Third Amendment is attached hereto as Exhibit 3 and incorporated herein for all purposes.

11. The Third Amendment, among other things, relocated Tenant's storage facility in the Building and adjusted the rent as indicated therein.  The Lease and all amendments thereto will be collectively referred to herein as the "Lease."

12. The Lease is currently scheduled to expire on April 30, 2018.  Tenant's Basic Monthly Rent for both the office space and storage facility is:

| Period | $/SQ FT | SQ FEET | Monthly Rent | Storage Rent | Total |
| --- | --- | --- | --- | --- | --- |
| 5/1/2016– 4/30/2017 | $ 54.1 | 18,754 | $ 84,549.28 | $ 274.50 | $ 84,823.78 |
| 5/1/2017- 4/30/2018 | $ 55.6 | 18,754 | $ 86,877.89 | $ 282.00 | $ 87,159.89 |

## Renovations to the Building

13. Landlord acquired the Building in 2013 and thereafter made plans to renovate the Building.  The renovations contemplated, among other things, the demolition and replacement of the Building's façade, demolition and updating the Building's lobby, as well as the addition of a fitness facility, conference center, and rooftop terrace.  Prior to the commencement of the planned renovations, Tenant complained that the renovation work would disrupt is ongoing

business operations. Landlord believed that it was fully within its rights provided under the Lease to perform all of the contemplated renovations.

14. Landlord and Tenant discussed a number of options related to the renovation plan, but did not reach an agreement as to moving forward with the project.

15. In December 2014, Tenant filed a lawsuit against Landlord in this District, Civil Action No. 1:14-cv-02030-PLJ, seeking injunctive relief to prevent the renovations from proceeding and asserting claims for anticipatory breach of contract and declaratory relief related to Landlord's plan to renovate the Building (the "Lawsuit").

16. Landlord and Tenant entered into an agreement resolving the Lawsuit before Landlord ever made an appearance (the "Agreement").

17. In the Agreement, Tenant acknowledged that Landlord has certain rights to renovate and perform work at the Building under particular terms set forth in the Lease. The Tenant further acknowledged that certain portions of the renovation work to be performed at the building would be loud in nature.

18. The Agreement provides that the following constitutes "Loud Work": "all loud lobby demolition, façade demolition/removal, slab drilling for anchors to install the façade, and hammering/sledgehammering/banging the façade for removal and/or installation." Landlord and Tenant further agreed that Loud Work could only be performed between the hours of 5:00 am — 9:00 am Mondays through Fridays, after 6 pm Mondays through Fridays, and anytime on Saturdays and Sundays (collectively, the "Permitted Work Hours"). Landlord and Tenant acknowledged that the Permitted Work Hours are reasonable and strike a compromise between Landlord's goals and the need to minimize disruptions to Tenant and its operations during the renovation of the Building.

19. The Agreement also provided that in the event Landlord breaches the Permitted Work Hours, Landlord would be required to provide rental abatements via an automatic rent offset.

### Tenant Alleges Landlord Breached the Agreement

20. On January 26, 2016, Tenant, through its Project Manager, sent written notice to Landlord alleging a number of occurrences beginning in mid-October 2015, where "Loud Work" was allegedly conducted outside of "Permitted Work Hours." Tenant attached a log to its January 26th letter summarizing a number of alleged email communications to Landlord regarding various noise complaints. A true and correct copy of the January 26th letter is attached hereto as Exhibit 4 and is incorporated herein for all purposes.

21. As a result of the alleged breaches of the Agreement, Tenant claimed it was entitled to $1,835,000 in aggregate rental abatements and that it would begin to implement the rent offsets starting with its rent payment due in February 2016. "Coincidentally," the total amount of renal abatements being claimed by Tenant due to alleged Loud Work violations is in the approximate range of the amount of Tenant's total remaining rent obligation under the Lease.

### Loud Work Performed During Permitted Work Hours

22. Landlord responded to the January 26th letter by informing Tenant that Landlord had carefully planned the renovation project, and that Loud Work as defined in the Agreement was only performed during Permitted Work Hours.

23. Landlord had previously advised Tenant's Project Manager that it disagreed with Tenant's assertion that Landlord allowed Loud Work to be conducted outside of Permitted Work Hours. To date, no evidence of any violation of the Permitted Work Hours has been provided,

and the log Tenant provided as well as the email communications from Tenant fall woefully short of establishing any violation.

24. Landlord has complied with its obligations under the Agreement, and no Loud Work was performed other than during Permitted Work Hours.

25. There are other noise-producing activities in the renovation plan that are outside the definition of Loud Work. Even though Landlord was not prohibited from conducting such renovation activities during normal business hours, Landlord instructed the construction crew, on a number of occasions, to cease performing certain work after a complaint was raised. Tenant's Project Manager has acknowledged as much.

### Tenant's Breach and Anticipatory Breach of the Lease

26. Tenant has failed and refused, and continues to fail and refuse, to pay the rent it owes under the Lease beginning with the rent due in February 2016. Based upon Tenant's January 26th letter and its subsequent failure to pay rent due for February, March, and April 2016, Landlord reasonably believes Tenant has completely repudiated its future rent obligations under the Lease and plans to make no further rent payments, yet will attempt to continue to occupy the Leased Premises until the Lease expires on April 30, 2018.

**27.** Tenant is currently in default in the amount of $355,870.54 as a result of its failure to make satisfy its rent obligations under the Lease for February, March, April and May 2016. This amount also includes Tenant Services, and 2015 CAM, Electricity, and Real Estate Tax Reconciliations. In addition, Tenant has failed to pay accrued late fees for the delinquent month of February, March, April and May 2016, rent payments in the amount of $17,793.53. Tenant's rent obligation during the remaining term of the Lease will total $1,978,980.26 for base rent and storage rent alone. This figure does not include CAM (currently estimated to be

approximately $4550 per month) or other charges for which Tenant may be obligated under the Lease.

## CAUSES OF ACTION

### Count I
### Breach of Contract

28. Landlord adopts and incorporates the foregoing paragraphs by reference.

29. The Lease, as modified by the Agreement, is a valid and enforceable agreement.

30. Landlord has fully performed all of its duties and obligations under the terms of the Lease and all conditions precedent to Landlord bringing this claim have been performed, have occurred, or have been waived.

31. Tenant has breached the Lease by failing to pay rent due under the Lease for the months of February, March, April and May 2016 and 2015 CAM, Electricity, and Real Estate Tax Reconciliation, and Tenant Services in the total amount of $355,870.54. In addition, as a result of Tenant's failure to timely make rental payments (i.e., within ten days after such amounts became due), Tenant is obligated to pay as additional rent a late fee equal to five percent of such delinquent amount, unless a lower amount is required by law. Pursuant to the terms of Article 22 of the Lease, accrued late charges are payable as additional rent due with the next monthly installment of rent.

32. Tenant has further breached the Lease by failing to pay the late charges totaling $17,793.53 that accrued in February, March, April, and May 2016.

33. As a proximate result of Tenant's breach of the Lease, as of the date of the filing of this Complaint Landlord has suffered actual damages in an amount no less than $373,664.07.

34. Landlord is entitled to recover its actual damages and other damages allowed under the Lease and law as a result of Tenant's breach of the lease, including unpaid rent, late charges, pre-judgment and post-judgment interest, and attorneys' fees.

## Count II
### Anticipatory Breach

35. Landlord adopts and incorporates the foregoing paragraphs by reference.

36. The Lease expires according to its terms on April 30, 2018. Tenant's remaining base and storage rent obligations under the Lease for the period of June 2016 through April 30, 2018 totals $1,978,980.26.

37. Tenant's January 26th letter and subsequent actions in failing to pay rent due under the Lease for February, March, April and May 2016, establishes that Tenant has absolutely and wrongfully repudiated and renounced its obligations to satisfy its obligation to pay rent under the Lease during the remaining term of the Lease.

38. As a proximate result of Tenant's repudiation and anticipatory breach of the Lease, Landlord has and will suffer additional actual damages in an amount no less than $1,978,980.26 during the remaining term of the Lease.

39. Landlord is entitled to recover its actual damages and other damages allowed under the Lease and law as a result of Tenant's anticipatory breach of the Lease, including unpaid rent, late fees, pre-judgment and post-judgment interest, and attorneys' fees.

## Count III
### Declaratory Judgment

40. Landlord adopts and incorporates the foregoing paragraphs by reference.

41. This Court has jurisdiction to issue a declaratory judgment in the action as the Court otherwise has subject matter jurisdiction, and there is an actual, substantial case or controversy among the parties. 28 U.S.C. §2201.

42. An actual, substantial case or controversy exists as to whether Tenant is entitled to any rental abatements via automatic rent offset. Landlord contends that Tenant is entitled to no such abatements or offsets as there was no Loud Work performed during the renovation of the Building outside or Permitted Work Hours.

43. Accordingly, Landlord requests the Court issue judgment in its favor, determining and declaring that Landlord has not violated the Loud Work prohibitions under the Agreement, and that Tenant has no right to any rental abatements via automatic rent offsets or otherwise due to alleged noisy and disruptive work during the course of the renovations at the Building.

## Count IV
### Attorneys' Fees

44. Landlord adopts and incorporates the foregoing paragraphs by reference.

45. As a result of Tenant's breach of the Lease, Landlord has been required to retain the undersigned counsel to prosecute its claim. Pursuant to Article 21 of the Lease, Landlord is entitled to recover, among other things its reasonable attorneys' fees and costs incurred in connection with this action. Landlord further seeks to recover its reasonable attorneys' fees as a result of its claim for declaratory judgment. Landlord also seeks conditional awards of attorneys' fees, costs and expenses, in the event of any and all post-verdict proceedings and appeals, to the greatest extent allowed by the Lease and/or law.

**PRAYER FOR RELIEF**

WHEREFORE, Landlord requests the following relief:

A. A Judgment be entered against Tenant in Landlord's favor on each claim in the Complaint;

B. The Judgment award Landlord monetary damages in an amount in excess of $75,000, as determined at trial;

C. The Judgment determine and declare that Landlord has not violated the Loud Work prohibitions under the Agreement, and that Tenant has no right to any rental abatements via automatic rent offsets or otherwise due to alleged noisy and disruptive work during the course of the renovations at the Building;

D. The Judgment award Landlord its reasonable attorneys' fees and expenses incurred in connection with this action, together with conditional awards in the event of any and all post-verdict proceedings and appeals;

E. The Judgment award Landlord pre-judgment and post-judgment interest at the highest lawful rate(s) allowed by the Lease and/or law;

F. The Judgment tax all costs of court against Tenant; and

G. The Judgment award Landlord all such other and further relief to which it is justly entitled.

DATED:  June 3, 2016.                    Respectfully submitted,

/s/ Thomas J. Lang
Thomas J. Lang (D.C. Bar No. 452398)
thomas.lang@haynesboone.com
Michael J. Scanlon  (*pro hac vice*)
michael.scanlon@haynesboone.com
HAYNES AND BOONE, LLP
800 17th Street, Suite 500
Washington, DC 20006
Telephone:     (202) 654-4570
Facsimile:     (202) 654-4249


Richard D. Anigian
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
214-651-5000  Telephone
214-651-5940  Facsimile
rick.anigian@haynesboone.com

**ATTORNEYS FOR 1401 NYA REO, LLC**